**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

RANEL C.,                                             )
                                                      )
      Plaintiff,                                   )
                                                      )
v.                                                    )
                                                      )     Case No. 22-cv-00543-SH
                                                      )
MARTIN J. O'MALLEY,[1]                                )
Commissioner of Social Security,                      )
                                                      )
      Defendant.                                   )

**<u>OPINION AND ORDER</u>**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Ranel C. seeks judicial review of the

decision of the Commissioner of Social Security (the "Commissioner") denying her claims

for disability benefits under Titles II and XVI of the Social Security Act (the "Act"),

42 U.S.C. §§ 401-434, 1381-1383f.  In accordance with 28 U.S.C. § 636(c), the parties have

consented to proceed before a United States Magistrate Judge.  For reasons explained

below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.      Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also id.*

§ 1382c(a)(3)(A) (regarding disabled individuals).  The impairment(s) must be "of such

severity that [the claimant] is not only unable to do [her] previous work but cannot,

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin J. O'Malley, Commissioner of Social Security, is substituted as the defendant in this action.  No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims.  20 C.F.R. § 404.1520.[2]  To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work.  *Id.* § 404.1520(a)(4)(i)-(v).  Generally, the claimant bears the burden of proof for the first four steps.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy.  20 C.F.R. § 404.1560(c)(2).[3]  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the

---

[2] *See generally* 20 C.F.R. § 416.920 for Title XVI.  (Where possible, the body of this opinion will reference the Title II regulations and provide, the first time mentioned, a parallel citation to Title XVI.)

[3] *See generally* 20 C.F.R. § 416.960 for Title XVI.

decision is supported by substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257,

1261 (10th Cir. 2005).  The "threshold for such evidentiary sufficiency is not high." *Biestek*

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  It is more than a scintilla but means only "such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The

Court will "meticulously examine the record as a whole, including anything that may

undercut or detract from the ALJ's findings in order to determine if the substantiality test

has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor

substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270,

1272 (10th Cir. 2008).  Even if a court might have reached a different conclusion, the

Commissioner's decision stands if supported by substantial evidence.  *See White v.*

*Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Background and Procedural History

Plaintiff applied for Title II and Title XVI disability benefits in October 2020.  (R.

261-64, 266-76.)  In her applications, Plaintiff alleged she has been unable to work since

November 2, 2019, due to conditions including depression, anxiety with panic attacks,

psychosis, paranoia, rapid cycling bipolar episodes, mood swings, difficulty being around

people/in public places, insomnia, and thyroid issues.  (R. 261, 266, 297.)  Plaintiff was

43 years old at the time of the ALJ's decision.  (R. 27, 261.)  She has a GED and past

relevant work as a Night Auditor, Receptionist, Nurse's Aide, and Pharmacy Technician.

(R. 56-57, 298.)

Plaintiff's claims were denied initially and upon reconsideration.  (R. 160-66, 169-

79.)  Plaintiff then requested and received a hearing before an Administrative Law Judge

("ALJ").  (R. 34-63, 181-82.)  The ALJ denied benefits and found Plaintiff not disabled.

(R. 15-27.)  The Appeals Council denied review on October 17, 2022 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.[4]  Plaintiff now appeals.

### III.    The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through June 30, 2023.  (R. 17.)  The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (*Id.*)  At step two, the ALJ found Plaintiff had the following severe impairments: (1) affective mood disorder; (2) generalized anxiety disorder; and (3) obesity.  (R. 17-18.)  At step three, the ALJ found Plaintiff's impairments did not meet or equal a listed impairment.  (R. 18-20.)

The ALJ then determined Plaintiff had the RFC to perform medium work with the following mental limitations[5]: "Due to the claimant's social limitations, the claimant is limited to no more than occasional interaction with the public but [should] never be required to work in proximity to crowds.  Lastly, to minimize stress, she should never be required to work at a forced pace (also called assembly line pace)."  (R. 20.)  The ALJ provided a recitation of the evidence that went into this finding.  (R. 20-25.)

At step four, the ALJ found Plaintiff unable to perform her past relevant work.  (R. 25.)  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as Billing Typist, General Clerk, Laundry Worker I, Industrial Sweeper/Cleaner, and Linen Room Attendant.  (R. 26-27.)  Accordingly, the ALJ concluded Plaintiff was not disabled.  (R. 27.)

---

[4] *See generally* 20 C.F.R. § 416.1481 for Title XVI.

[5] Plaintiff does not challenge the ALJ's treatment of her physical limitations.

## IV.    Issues

On appeal, Plaintiff asserts the ALJ erred by: (1) failing to discuss the factors required by 20 C.F.R. § 404.1520c[6] when evaluating certain prior administrative medical findings (ECF No. 10 at 6-9); and (2) failing to explain why limitations set forth in those prior administrative findings were excluded from the RFC (*id.* at 9-10).  Plaintiff argues these errors were harmful.  (*Id.* at 10-14.)  Having considered the ALJ's decision and the administrative record, the undersigned agrees.  Particularly, the Court finds the ALJ's consideration of the prior administrative medical findings—and his incorporation of those opinions into the RFC—was in error.  The undersigned does not address Plaintiff's other arguments.

## V.    Analysis

### A.    The ALJ's Consideration of the Prior Administrative Medical Findings.

#### 1)  Drs. Holloway and Gallavan's findings

Plaintiff's primary argument focuses on the ALJ's evaluation of two State Agency psychologists—Drs. Joan Holloway and Deanna Gallavan.  Prior to the hearing, both reviewed the record and offered opinions about Plaintiff's residual mental functioning. (R. 64-78, 102-21.)  The following is a comparison of the opinions, with significant differences between the two underlined for clarity:

| Dr. Holloway: | Dr. Gallavan: |
|---|---|
| Clmt[7] is able to understand, recall and perform <u>simple tasks of 1 or 2 steps</u> with routine supervision, making <u>simple</u> work task decisions and judgments. | Clmt is able to understand, recall and perform <u>simple and detailed tasks of 3-4 steps</u> with routine supervision, making <u>related</u> work task decisions and judgments. |

---

[6] *See generally* 20 C.F.R. § 416.920c for Title XVI.

[7] I.e., Claimant.

| Dr. Holloway: | Dr. Gallavan: |
|---|---|
| Clmt is able to focus for two-hour periods with routine breaks and pace and persist for 8-hour workday and 40-hour workweek despite psychological symptoms. | Clmt is able to focus and attend for two-hour periods with routine breaks and pace and persist for 8-hour workday and 40-hour workweek despite psychological symptoms. |
| Clmt is able to interact appropriately with coworkers and supervisors for incidental work purposes. | Clmt is able to interact appropriately with coworkers and supervisors for incidental work purposes. |
| Clmt <u>cannot interact</u> with the general public. | Clmt is <u>able to interact appropriately for occasional</u> public contact. |
| Clmt is able to adapt to work setting and some changes in work settings. | Clmt is able to adapt to work setting and some changes in work settings. |
| Clmt is able to avoid . . . hazards. | Clmt is able to avoid hazards. |

(R. 78 (emphasis added), R. 121 (emphasis added).)

In his decision, the ALJ considered these opinions simultaneously and found them equally persuasive.  (R. 23-24.)  Specifically, the ALJ stated: "Dr. Holloway's and Dr. Gallavan's opinions were somewhat persuasive as they were generally consistent with and supported by the objective evidence."  (R. 23.)  In support of this finding, the ALJ listed various mental status examinations from Plaintiff's treatment.  (R. 23-24 (citing Exhibits B11F, B14F, B18F, and B19F).)  In these exams, the ALJ noted that Plaintiff generally presented with symptoms controlled through medication; appropriate behavior and speech; no thought disorder or hallucinations; full orientation; good remote memory, attention, and concentration; and an ability to perform household tasks and activities of daily living.  (*Id.*)

### 2) Prior Administrative Medical Findings – Generally

A prior administrative medical finding is a finding "about a medical issue" from the Social Security Administration's "Federal and State agency medical and psychological consultants at a prior level of review" in the claimant's "current claim based on their

6

review of the evidence in [the] case record." 20 C.F.R. § 404.1513(a)(5).[8]  Such findings include, among other topics, the existence and severity of the claimant's impairments and symptoms; whether the impairments meet or medically equal a listing; and the claimant's RFC. *Id.*

When considering a prior administrative medical finding, an ALJ does not defer or give it any specific evidentiary weight. *Id.* § 404.1520c(a).  Instead, the ALJ evaluates the "persuasiveness" of the finding by considering five factors. *Id.* § 404.1520c(a) & (c). These factors include (1) the supportability of the finding; (2) the consistency of the finding; (3) the medical source's relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (4) the medical source's specialization; and (5) any other factors that tend to support or contradict the finding. *Id.* § 404.1520c(c).

In every situation, the ALJ must explain how he considered the first two factors— supportability and consistency. *Id.* § 404.1520c(b)(2).  However, when there are two or more differing prior administrative medical findings about the same issue that are equally well-supported and consistent with the record, the ALJ is required to do more, and must explain how the other factors were weighed. *Id.* § 404.1520c(b)(2)-(3).  This is one of the cases where such an explanation was necessary.

### 3) Failure to consider additional factors

As noted above, the ALJ offered no distinction between the consistency and supportability of Drs. Halloway and Gallavan's findings, apparently judging them "both equally well supported . . . and consistent with the record . . . ." *Id.* § 404.1520c(b)(3).  Yet

---

[8] *See generally* 20 C.F.R. § 416.913 for Title XVI.

these opinions were "not exactly the same," including in how they evaluated Plaintiff's ability to perform tasks and interact with the public. (*See supra* at 5-6.)  The ALJ neither acknowledged these differences nor considered the additional factors outlined in 20 C.F.R. § 404.1520c(c).  Such an omission was erroneous.

The Commissioner argues that, while the ALJ did not explicitly explain his consideration of the (c)(3) to (c)(5) factors, it is enough that he noted both Dr. Holloway and Dr. Gallavan were "reviewing State Agency personnel" and that each had a "Ph.D.," implying they were psychologists.  (ECF No. 11 at 8.)  It is not.

First, the Commissioner's argument is contrary to the plain language of § 404.1520c(b)(3), which states that when an ALJ finds

> that two or more . . . prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those . . . prior administrative medical findings . . . .

*Id.* (emphasis added).  To accept the Commissioner's circular argument would be to find that an ALJ could avoid these explicit requirements by using the simple expedient of noting that the prior administrative medical finding was made by a "reviewing State Agency personnel" who was a "psychologist"—i.e., that it met the bare standards of a prior administrative medical finding.[9]

Second, this sort of articulation falls far short of the ALJ "articulat[ing] how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) . . . for those . . . prior administrative medical findings" in coming to his decision.  *Id.*  For

---

[9] "A prior administrative medical finding is a finding . . . about a medical issue made by our . . . State agency . . . psychological consultants at a prior level of review . . . ." 20 C.F.R. § 404.1513(a)(5).

example, paragraph (c)(5) states the ALJ will consider "other factors that tend to support or contradict" the prior administrative medical finding. *Id.* § 404.1520c(c)(5). These other factors may include "evidence showing a medical source has familiarity with the other evidence in the claim" and whether "new evidence" received after the prior administrative finding has made it more or less persuasive. *Id.* The ALJ articulated no such factors. And while the ALJ may have had some awareness of Dr. Holloway and Dr. Gallavan's "relationship with the claimant" or "specialization," *id.* § 404.1520c(c)(3)-(4), he in no way articulated how he considered those factors in determining whether to adopt some or all of their findings.

This lack of required articulation is particularly troubling given the difference between the two prior administrative findings. As noted above, Dr. Holloway found Plaintiff could not interact at all with the general public, while Dr. Gallavan found she could have occasional contact. (*See supra* at 6.) The ALJ must have preferred Dr. Gallavan's finding on this issue over Dr. Holloway's, as the RFC included "occasional interaction with the public." (R. 20.) But the ALJ offered no articulation as to why he credited Dr. Gallavan, despite finding Dr. Holloway's opinion equally supported and consistent with the record. *See Leep v. Kijakazi*, No. CIV-20-466-RAW-SPS, 2022 WL 879567, at *4 (E.D. Okla. Mar. 8, 2022) (ALJ found two prior administrative medical opinions partially persuasive "under the same reasoning but did not delineate why she preferred parts of one opinion over the other," which was in error, as the "ALJ must explain how she resolve the material inconsistencies" in the "opinions as well as address the remaining factors for each since she found both opinions equally supported and consistent"). This was a violation of the articulation requirements of § 404.1520c(b)(3).

As further discussed below, the ALJ compounded this error by providing no explanation at the RFC phase regarding certain portions of both psychologists' findings that he either overlooked or rejected.

### B. Incorporation of the Prior Administrative Medical Findings in the RFC.

#### 1) RFC – Generally

In order to proceed to steps four and five of the sequential evaluation, the ALJ must first determine a claimant's RFC.  That is, a claimant may have impairments and related symptoms, and those symptoms may cause physical or mental limitations that affect what the claimant can do in a work setting.  20 C.F.R. § 404.1545(a)(1).[10]  The claimant's RFC is what's left—"the most [the claimant] can still do despite [her] limitations."  *Id.*  The Commissioner makes this decision based on "all the relevant medical and other evidence" in the case record.  *Id.* § 404.1520(e).

In assessing the RFC, the ALJ must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," and must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  Categories of evidence include (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) certain prior administrative medical findings.  20 C.F.R. § 404.1513(a).

When discussing opinions and other medical evidence, it is improper for an ALJ to "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th

---

[10] *See generally* 20 C.F.R. § 416.945 for Title XVI.

Cir. 2004).  However, the ALJ is under no obligation to "discuss every piece of evidence." *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (citing *Clifton* in the context of medical opinion evidence).  Nor is there any requirement "for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," since it is the ALJ, "'not a physician, [who] is charged with determining a claimant's RFC . . . .'" *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004)).  Instead, to the extent "the RFC assessment conflicts with" a medical opinion, "the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, at *7; *see also Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007).[11]  The ALJ in this case failed to offer such an explanation for the opinions of Drs. Holloway and Gallavan.

### 2) The ALJ's Consideration of Drs. Holloway and Gallavan's Findings in the RFC Analysis

As noted above, both of the "somewhat persuasive" prior administrative medical findings contained limitations on Plaintiff's capacities to (1) understand, recall and perform tasks; and (2) interact appropriately with coworkers and supervisors.  (*Supra* at 5-6.)  For the first category, Dr. Holloway opined that Plaintiff was limited to "simple tasks of 1 or 2 steps" and "simple" decisions, while Dr. Gallavan opined that Plaintiff was limited

---

[11] In *Haga*, the ALJ accepted the opinion of a consulting mental health professional regarding certain restrictions the claimant had—including her ability to understand, remember, and carry out detailed instructions and deal with the public—but inexplicably rejected the other limitations offered in the opinion. *Id.* at 1207.  Because the ALJ did not provide explanations for why these limitations were being rejected, and because the ALJ was "not entitled to pick and choose through an uncontradicted medical opinion," the Tenth Circuit reversed and remanded the matter, as "the ALJ should have explained why he rejected four of the moderate restrictions on" the doctor's RFC assessment. *Id.* at 1207-08.

to "simple and detailed tasks of 3-4 steps" and "related" decisions. (R. 78, 121.) For the second category, both psychologists opined that Plaintiff could interact with coworkers and supervisors for "incidental work purposes." (*Id.*) In the RFC, the ALJ made no mention of any of these limitations. While the ALJ was not under an obligation to adopt every finding made by Drs. Holloway or Gallavan, he was at least required to explain why the findings of two State Agency reviewers he found to be "generally consistent with and supported by the objective evidence" were omitted from the RFC.[12]

The Commissioner attempts to argue away this deficiency. Particularly, the Commissioner maintains that the ALJ's citation to a variety of mental status exams from Plaintiff's treatment records and consultative examinations constituted an explanation as to "why he found [the prior administrative findings] only somewhat, and not fully, persuasive . . . ." (ECF No. 11 at 9.) The Court disagrees.

The exams the ALJ referenced were a scattershot of records demonstrating instances in which Plaintiff generally presented with symptoms controlled through medication; appropriate behavior and speech; no thought disorder or hallucinations; full orientation; good remote memory, attention, and concentration; and an ability to perform household tasks and activities of daily living. (R. 23-24.) These records—placed out of context and without any clarifying explanation anchoring them to the ALJ's analysis of Drs. Holloway and Gallavan's opinions—give no insight into whether the ALJ had rejected the prior administrative medical findings, overlooked them, or otherwise. In fact, the ALJ's notation that the opinions were "generally consistent with and supported by the

---

[12] This is especially true considering that another opinion the ALJ found "generally persuasive" (R. 21)—Dr. Melinda Shaver's—indicated that, while Plaintiff appeared "emotionally capable of employment," her "employment should not require a good memory" (R. 1093).

objective evidence," followed by his recitation of such evidence, leads the Court to believe

he found the opinions consistent with the cited records.  (R. 23-24.)  Therefore, his

decision not to adopt any limitation regrading Plaintiff's ability to understand, recall, and

perform tasks or interact with supervisors and coworkers is left unexplained.[13]  *See*

*Bryant v. Kijakazi*, No. CIV-21-1104-SLP, 2022 WL 16738649, at \*1-2 (W.D. Okla. Nov.

7, 2022) (adopting recommendation of reversal where ALJ did not incorporate prior

administrative findings into RFC or explain why the limitations were not included).

While an ALJ is not required to adopt every medical opinion or administrative finding, he

may not pick through medical reports and use "portions of evidence favorable to his

position while ignoring other evidence."  *Hardman*, 362 F.3d at 681.  As such, he is

required to explain why a persuasive opinion was not adopted when it conflicts with the

RFC.  The undersigned cannot follow the ALJ's reasoning in this case, and the ALJ's

omission of this explanation constitutes reversible error.  *Cf. Keyes-Zachary v. Astrue*,

695 F.3d 1156, 1166 (10th Cir. 2012) (where the court "can follow the adjudicator's

reasoning in conducting [its] review, and can determine that correct legal standards have

---

[13] Even if we were to assume that the ALJ's citation to mental status exams showing "good remote memory, attention and concentration" was an effort to reject the prior administrative findings regarding Plaintiff's ability to understand, recall, and perform tasks, this assumption would be undermined by the ALJ's findings regarding Dr. Shaver's opinion.  (R. 21.)  While the ALJ may have found Drs. Holloway and Gallavan's opinions only "somewhat persuasive," he found Dr. Shaver's "generally persuasive."  (*Id.*)  Dr. Shaver opined that Plaintiff's employment "should not require a good memory."  (*Id.*)  Therefore, it is unclear how the ALJ could accept such an opinion while also rejecting the prior administrative findings due to Plaintiff presenting with normal memory on mental status exams.  An ALJ is obligated to "explain how any material inconsistencies or ambiguities . . . were considered and resolved."  SSR 96-8p, at \*7.

been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal").

These errors were not harmless.[14]

## VI.       Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **REVERSED AND REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 5th day of March, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[14] To the extent any "harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action . . . ." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *see also Haga*, 482 F.3d at 1207-08 (The court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."). The undersigned would be usurping the authority delegated to the ALJ if it evaluated Drs. Holloway and Gallavan's opinions using the additional factors set forth in 20 C.F.R. § 404.1520c(c), or if it determined—for the first time—how findings that the ALJ insufficiently considered would factor into the RFC. The errors are not harmless.